1   Daniel R. Watkins
    Nevada State Bar No. 11881
2   DW@wl-llp.com
    Brian S. Letofsky
3   Nevada State Bar No. 11836
    Brian.Letofsky@wl-llp.com
4   WATKINS & LETOFSKY, LLP
    400 S. Fourth Street, Suite 280
5   Las Vegas, NV 89101
    Office: (702) 385-5191; Fax: (702) 385-7282
6
    Attorneys for Plaintiff, RAYMOND COURY
7

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10  RAYMOND COURY,                          Case No.:

11                 PLAINTIFF;              **COMPLAINT FOR DAMAGES**

12      vs.

13  ELDORADO RESORTS CORPORATION,          **(DEMAND FOR JURY TRIAL)**
    a Florida corporation; MICHAEL MARRS;
14  BRUCE POLANSKY; KRISTEN BECK;
    DOMINIC TALEGHANI; JAMES
15  GRIMES; AND DOES 1-50, inclusive;

16                 DEFENDANTS.

17

18          COMES NOW, Plaintiff, RAYMOND COURY, and files this civil action against

19  Defendants, and each of them, for violations of Title VII of the Civil Rights Act of 1964 (42

20  U.S.C. §2000e *et seq.*); Title VII of the Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*); the

21  Family Medical Leave Act (29 U.S.C. §2601 *et seq.*);  the Americans with Disabilities Act of

22  1990 (42 U.S.C. §§12112 *et seq.*) as well as numerous wage and hour violations under the Fair

23  Labor Standards Act of 1938 (29 U.S.C. §§ 201 *et seq.*) and Nevada Revised Statutes §§ 608.011

24  *et seq.*; and related claims under Nevada law, seeking damages, and alleges as follows:

25  //

26  //

27  //

28  //

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §2000e-5(f)(3), which confer original jurisdiction on federal district courts in suits to address the deprivation of rights, privileges and immunities secured by the United States Constitution and federal law.

2.      The jurisdiction of this Court is also invoked under 42 U.S.C. §§ 1981 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under Nevada law.

3.      Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Plaintiff has exhausted his administrative remedies.

5.      All conditions precedent to jurisdiction under section 706 of Title VII, 42 U.S.C. §2000e-5(f)(3), have occurred or been complied with:

a.      A charge of employment discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practices alleged herein and / or within 300 days of PLAINTIFF instituting proceedings with a State or local agency with authority to grant or seek relief from such unlawful employment practices alleged herein;

b.      A Notice of Right to Sue in Federal Court was received from the EEOC, dated March 9, 2015. (A true and correct copy of said letter is attached and incorporated herein as Exhibit 1.)

6.      This complaint has been filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

7.      Venue is proper in the District of Nevada because the unlawful employment practices alleged herein were committed in whole or in part in the District of Nevada pursuant to 28 U.S.C. § 1391(b).

//

## PARTIES

### PLAINTIFF

8.  Plaintiff, RAYMOND COURY (hereinafter "PLAINTIFF"), was a qualified/eligible "employee" of Defendant, ELDORADO RESORTS CORPORATION ("ELDORADO"), within the meaning of 42 U.S.C. §2000e(f); 29 CFR 825.110; Title VII of the Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*); Family Medical Leave Act (29 U.S.C. §2601 *et seq.*); the Americans with Disabilities Act of 1990 (42 U.S.C. §§12112 *et seq.*); the Fair Labor Standards Act of 1938 (29 U.S.C. §§ 201 *et seq.*); Nevada Revised Statutes §§ 608.010 and 613.010 *et seq.*; and related claims under Nevada law.

### DEFENDANTS

9.  Defendant, ELDORADO RESORTS CORPORATION (hereinafter "ELDORADO"), is a Florida corporation registered to conduct business in Nevada and does so as ELDORADO RESORTS CORPORATION. ELDORADO employs 50 or more employees and is an "employer" within the meaning of 42 U.S.C. §2000e(b); 29 CFR 825.104; Title VII of the Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*); the Americans with Disabilities Act of 1990 (42 U.S.C. §§12112 *et seq.*); the Fair Labor Standards Act of 1938 (29 U.S.C. §§ 201 *et seq.*); Nevada Revised Statutes §§ 608.011 and 613.310; and related claims under Nevada law. ELDORADO has offices located at 2150 West Jo Rae Avenue, Las Vegas, Nevada 89183.

10. MICHAEL MARRS, an individual, is the Senior Project Manager at ELDORADO. At all times mentioned herein, he was responsible for the acts described while acting in his capacity as a supervisor of PLAINTIFF and executive employee at ELDORADO.

11. BRUCE POLANSKY, an individual, is the Senior Vice President of Sales at ELDORADO. At all times mentioned herein, he was responsible for the acts described while acting in his capacity as a supervisor of PLAINTIFF and executive employee at ELDORADO.

12. KRISTEN BECK, an individual, is the Director of Human Resources at ELDORADO. At all times mentioned herein, she was responsible for the acts described while acting in her capacity as Director of Human Resources and executive employee at ELDORADO.

//

13.   DOMINIC TALEGHANI, an individual, was the Senior Project Director at ELDORADO.  At all times mentioned herein, he was responsible for the acts described while acting in his capacity as a supervisor of PLAINTIFF and executive employee at ELDORADO.

14.   JAMES GRIMES, an individual, is the Director of Operations at ELDORADO. At all times mentioned herein, he was responsible for the acts described while acting in his capacity as a supervisor of PLAINTIFF and executive employee at ELDORADO.

15.   The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 50, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names.  PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named DEFENDANTS is in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner.  PLAINTIFF shall request leave of this court to amend this Complaint when the true names, capacities, participation and responsibilities have been ascertained.

## GENERAL FACTUAL ALLEGATIONS

16.   PLAINTIFF is a 60 year-old Caucasian male.  He is Catholic.  He is of Lebanese descent.  He began his employment with ELDORADO in or about 2001.  At the end of PLAINTIFF'S employment on April 20, 2014, his pay included a salary of $70 per day and a 4% commission for sales and an override commission at .25%.  PLAINTIFF worked as a Sales Director, a Take-over Manager, a Front Line Salesperson and an Assistant Project Director during his employment with ELDORADO.

17.   PLAINTIFF qualified for and was granted eligibility for leave under the Family Medical Leave Act (FMLA) for the last two years of his employment with ELDORADO. Specifically, he had a low back problem causing neuropathy and a recent heart attack and minor stroke.  His medical condition made it painful and difficult to stand for long periods of time. When he experienced severe symptoms and requested FMLA leave he was either told by Human Resources that he could not leave or made to needlessly wait before he could leave.  He was never given a reason for why he could not leave or why he had to needlessly wait before he

1   could leave.  His supervisors forced him to stay at work later than necessary, and refused to let
2   him take breaks, sit down, or leave work if he experienced severe symptoms.

3       18.   ELDORADO repeatedly denied PLAINTIFF requests for leave under FMLA by
4   threatening to fire him or to withhold his pay if he did not stay to work or come in to work when
5   he needed to take his qualified / authorized FMLA leave.  PLAINTIFF was repeatedly forced to
6   work over eight hours per day despite informing KRISTEN BECK that he required time off
7   because of his medical condition.  When he needed to take an FMLA day due to his medical
8   condition, he was made to come into the office to discuss why he needed to take the day off with
9   Human Resources.  In addition, he was not given time off when requested and his supervisors
10  continuously demanded that he get into work or stay later than necessary.

11      19.   PLAINTIFF'S employment with ELDORADO ended on or about April 20, 2014,
12  when he was constructively and wrongfully discharged.   In the midst of ELDORADO'S
13  mounting unlawful employment practices, PLAINTIFF was faced with DEFENDANTS'
14  complete disregard for PLAINTIFF'S health and well being.  DEFENDANTS had made
15  PLAINTIFF'S employment so utterly intolerable that she was unable to continue working for
16  ELDORADO.

17      20.   Prior to his constructive discharge, PLAINTIFF was provided with a writing from
18  ELDORADO indicating that employees with FMLA would from now on be placed on
19  Intermittent FMLA and that their 15 days of vacation, personal time and sick time were now
20  removed and any missed day of work was to be taken against FMLA time.  In other words, any
21  time off from work regardless of the reason was to be credited against FMLA leave time.

22      21.   When PLAINTIFF was on FMLA and requested time off, he was continuously
23  demanded that he get into work or stay later than necessary, sometimes as long as 12 hours, even
24  after he would have an episode or flare-up of his FMLA medical condition.  In addition, when
25  FMLA employees, including PLAINTIFF showed up late to work at ELDORADO, the time was
26  deducted from their FMLA leave regardless of whether the late arrival was the result of a FMLA
27  leave issue or not.  However, when other non FMLA employees showed up late, they still

28

1  received their full per diem and commission. Essentially, only FMLA employees were punished
2  for showing up late at ELDORADO.

3      22.    DEFENDANTS have created and cultivated a system to intentionally and
4  unlawfully interfere with its employees' protected leave (including PLAINTIFF'S) under the
5  Family Medical Leave Act ("FMLA"). Managers and directors (including PLAINTIFF) at
6  ELDORADO were ordered by DEFENDANTS to target FMLA employees for "write ups" for
7  poor performance when they left early or called in to take their FMLA leave. Senior
8  management at ELDORADO (including DEFENDANTS) instructed managers and directors that
9  they were required to obtain three (3) write ups as soon as possible on FMLA employees so
10  ELDORADO would have "cause" to fire the employee despite the protected FMLA leave.
11  Senior management officials at ELDORADO (including DEFENDANTS) also expressly
12  instructed mid managers and Human Resources to place FMLA employees on Administrative
13  Leave for a significant enough period of time to reduce the employees hours so much that the
14  employee would not qualify for FMLA leave the following year and the employee could be fired.
15  Additionally, at some point in early 2014, DOMINIC TALEGHANI, Senior Project Director at
16  ELDORADO, stated in a meeting to all in attendance (including PLAINTIFF), that if it was up
17  to him, he would fire all employees on FMLA. PLAINTIFF told ELDORADO management that
18  he refused to conduct such practices. As a result, PLAINTIFF'S positions, commissions and
19  teams were changed in a way that negatively impacted his income. Productive members of his
20  team were transferred away from him, and he was given less productive salespeople to replace
21  them. This was done specifically because he refused to issue write-ups to FMLA employees
22  without cause.

23      23.    DEFENDANTS set out to purposefully and methodically interfere with
24  PLAINTIFF'S leave under FMLA and to discriminate against his use of his qualified FMLA
25  leave. This policy of interfering with FMLA leave in order to deprive employees of future
26  FMLA leave was expressly stated by DEFENDANTS and other ELDORADO management
27  officials on numerous occasions. This policy was effectuated with the express intent of firing
28  employees once they no longer qualified for protected FMLA leave.

24.     ELDORADO repeatedly retaliated against PLAINTIFF for reporting the hostile work environment at the Las Vegas ELDORADO facility.  He experienced extensive stress and verbal abuse in his work environment and was forced to stay for extended periods afterhours by senior management, including but not limited to MICHAEL MARRS.  He was continuously threatened and harassed by his supervisors (including DEFENDANTS), including but not limited to MICHAEL MARRS.  Although PLAINTIFF has repeatedly reported this abuse, nothing has changed.

25.     Regularly throughout his employment at ELDORADO, PLAINTIFF witnessed discrimination by DEFENDANTS based on race, color, religion, and national origin. ELDORADO claims to have had a system of randomly matching sales representatives to customers.   The primary purpose of this type of system is to prevent discrimination. ELDORADO has, however, admitted that the random matching system has a manual override and that it is frequently utilized to match Filipino sales representatives with Filipino customers. ELDORADO claims that this was done to overcome language barriers; however, this is merely a pretext to ELDORADO'S despicable and unlawful discriminatory practices.  Despite ELDORADO'S pretextual justification for the manual override, ELDORADO repeatedly forced matches including, but not limited to, African Americans with African Americans; Asians with other Asians (often who did not share a common language); Mormons with Mormons; Jews with Jews; Muslims with Muslims, Hindus with Hindus; Chinese with Chinese; Hispanics with Hispanics; and the list goes on.  Further, ELDORADO ordered its sales representatives to sit in the lobby and target customers based upon their similar race, color, religion, and/or national origin.

26.     Instead of PLAINTIFF having fair opportunities to make particular sales, ELDORADO engaged in the unlawful matching of tours through manual overrides.  PLAINTIFF was frequently told to sell to customers of Lebanese descent.  On a number of occasions, he was pulled away from customers of non-Lebanese descent in the middle of a tour in order to sell to customers of Lebanese descent.  This caused him to miss out on sales that he had begun with non-Lebanese customers.  The commissions were given to the non-Lebanese salespeople who

completed the sale that PLAINTIFF started. All of this discrimination had an impact on PLAINTIFF'S income because he was purposefully not allowed to be involved with potential sales to customers of a different particular race, color, religion, and/or national origin. Specifically, he was repeatedly denied sales opportunities of customers who were not Caucasian, Lebanese, and/or Catholic.

27.    In addition to the intentional interference and discrimination issues, ELDORADO failed to provide PLAINTIFF with any breaks for lunch or rest for the years he was employed. ELDORADO failed to pay PLAINTIFF overtime due to him despite the fact that he consistently worked over 40 hours per week. PLAINTIFF believes that ELDORADO infrequently paid him overtime based upon hours worked in weekly periods which is not consistent with the law.

28.    ELDORADO intentionally stole money from PLAINTIFF by indiscriminately charging commission reversals against his earnings, commission reversals for sales made months and years before the reversal charge. ELDORADO does not provide any explanation as to why the commission reversals were charged. ELDORADO also "backdoored" numerous sales made by PLAINTIFF when they contacted customers and offered a new, better deal for the customer. When the customer accepted, ELDORADO cancelled PLAINTIFF'S sale and sold the property directly to the customer. ELDORADO then cut PLAINTIFF'S commissions on his sales.

29.    PLAINTIFF was wrongfully subjected to ELDORADO'S numerous unlawful employment practices and his wage and hour rights were consistently violated.

30.    All of these illegal and despicable tactics of ELDORADO caused PLAINTIFF to suffer physical pain, significant emotional distress, embarrassment, humiliation, etc. In addition, he has suffered extensive and significant loss of income.

31.    The actions by DEFENDANTS are a substantial burden to PLAINTIFF'S rights causing actual injury to him, financial loss, severe detriment to his professional career, and created such intolerable, discriminatory, and difficult working conditions to PLAINTIFF and others that PLAINTIFF had no choice but to stop working at ELDORADO.

//

//

## COUNT I

### DISABILITY DISCRIMINATION - DISPARATE TREATMENT

Americans with Disabilities Act (42 U.S.C. §§12112 – 12117)

Title VII - Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*)

NV Rev. Stat. § 613.330 *et seq.*

(ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)

32.     PLAINTIFF hereby incorporates paragraphs 1 through 30 of this Complaint as though fully set forth herein.

33.     PLAINTIFF had a disability within the meaning of the Americans with Disabilities Act ("ADA"). A "disability" under the ADA is a physical or mental impairment or being regarded as having a physical or mental impairment that substantially limits one or more of the major life activities of such individual. The terms disability and physical or mental impairment include (1) any physiological disorder, or condition affecting one or more of the following body systems: neurological, musculoskeletal, and others; or (2) any mental or psychological disorder such as emotional or mental illnesses, among others.

34.     PLAINTIFF was a qualified individual, meaning an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. At all times during his employment, PLAINTIFF satisfied the requisite skill, experience, education, and other job-related requirements of the employment position and could perform the essential functions of the position, with or without reasonable accommodations.

35.     ELDORADO failed to initiate and/or engage in the interactive process with PLAINTIFF to determine what reasonable accommodations would apply to enable PLAINTIFF to work.

36.     PLAINTIFF requested of ELDORADO an accommodation due to his disability and ELDORADO knew, or had reason to know that (a) PLAINTIFF has a disability; and (b) PLAINTIFF was experiencing workplace problems because of the disability. ELDORADO could have made a reasonable accommodation that would have enabled the PLAINTIFF to

1   continue to perform the essential functions of the job by allowing him to stay home, or to leave

2   work when he experienced severe symptoms caused by his low back condition.

3       37.    The requested accommodation was reasonable and did not impose an undue

4   hardship on the operation of ELDORADO'S business.  ELDORADO failed to provide this

5   accommodation and unreasonably failed to provide any other accommodation.

6       38.    PLAINTIFF'S disability was a motivating factor for ELDORADO'S disparate

7   treatment of PLAINTIFF and for its unlawful employment practices that led to PLAINTIFF'S

8   constructive discharge.

9       39.    PLAINTIFF was subjected to ELDORADO'S disparate treatment based on

10  PLAINTIFF'S disability.  ELDORADO'S unlawful discrimination against PLAINTIFF includes

11  treating employees differently based on their disability related to employment, including

12  recruitment, hiring, assignments, discipline, promotion, and benefits.

13      40.    ELDORADO, through its agents or supervisors, failed to adequately supervise,

14  control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of

15  DEFENDANTS and ELDORADO'S supervisors and Human Resources Department as

16  described above thereby ratifying the unlawful conduct of its supervisors and Human Resources

17  Department.

18      41.    ELDORADO'S unlawful actions were intentional, willful, malicious and/or done

19  with reckless disregard for PLAINTIFF'S federally protected rights.

20      42.    PLAINTIFF requests relief as described in the Prayer for Relief below.

21  **COUNT II**

22  **TITLE VII - DISCRIMINATION**

23  **(RACE, COLOR, RELIGION, AND NATIONAL ORIGIN)**

24  **Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*)**

25  **Title VII - Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*)**

26  **NV Rev. Stat. § 613.330 *et seq.***

27  **(ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)**

28  //

43.   PLAINTIFF hereby incorporates paragraphs 1 through 41 of this Complaint as though fully set forth herein.

44.   During the course of PLAINTIFF'S employment with ELDORADO, ELDORADO, by and through its agents and employees, has discriminated against PLAINTIFF in the terms, conditions, and privileges of employment in various ways, in substantial part because of his race, color, religion, and/or national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

45.   ELDORADO'S unlawful discrimination against PLAINTIFF included treating PLAINTIFF differently based on his race, color, religion, and/or national origin related to employment, including recruitment, hiring, assignments, discipline, promotion, and benefits.

46.   Specifically, the disparate treatment included ELDORADO steering and / or matching employees of one race, color, religion, and/or national origin to customers of similar race, color, religion, and/or national origin all to the discriminatory detriment of all employees of another race, color, religion, and/or national origin.

47.   PLAINTIFF claims that his race, color, religion, and/or national origin was either the sole reason or a motivating factor for ELDORADO'S decision to harass and constructively discharge him.

48.   As a proximate result of DEFENDANTS' discriminatory actions, PLAINTIFF has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress. As a result of those actions and consequent harms, PLAINTIFF has suffered such damages in an amount to be proved at trial.

49.   ELDORADO, through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of DEFENDANTS and ELDORADO'S supervisors and Human Resources Department as described above thereby ratifying the unlawful conduct of its supervisors and Human Resources Department.

50.   DEFENDANTS' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for PLAINTIFF'S federally protected rights.

51.     PLAINTIFF requests relief as described in the Prayer for Relief below.

## COUNT III

## FAMILY MEDICAL LEAVE INTERFERENCE

### Family Medical Leave Act (29 U.S.C. §2615(a)(1))

**(ELDORADO RESORTS CORPORATION, MICHAEL MARRS, BRUCE POLANSKY,**

**KRISTEN BECK, DOMINIC TALEGHANI, JAMES GRIMES AND DOES 1-50,**

**inclusive.)**

52.     PLAINTIFF hereby incorporates paragraphs 1 through 50 of this Complaint as though fully set forth herein.

53.     During the course of PLAINTIFF'S employment with ELDORADO, DEFENDANTS, by and through its agents and employees, interfered with and discriminated against PLAINTIFF in the terms, conditions, and privileges of employment in various ways including violations of Family Medical Leave Act (29 U.S.C. §2601 *et seq.*).

54.     PLAINTIFF had a "serious health condition," defined in the statute as an illness, injury, impairment or physical or mental condition that involves either 1) inpatient care in a hospital or other care facility, or 2) continuing treatment by a health care provider.

55.     PLAINTIFF gave appropriate notice of his need to be absent from work. "Appropriate notice" was given where, if PLAINTIFF could foresee the need for leave, he notified ELDORADO at least 30 days before the leave was to begin, and/or if PLAINTIFF could not foresee the need for leave, PLAINTIFF notified ELDORADO as soon as practicable after he learned of the need for leave.

56.     PLAINTIFF was required to timely notify ELDORADO of the need for leave, but PLAINTIFF was not required to specify that the leave was sought under the Family and Medical Leave Act, nor was PLAINTIFF required to mention that Act in the notice.   Nor was PLAINTIFF required to provide the exact dates or duration of the leave requested.  Moreover, PLAINTIFF was not required to give ELDORADO a formal written request for anticipated leave.   Simple verbal notice was provided and sufficient when a written request was not available.

57.   DEFENDANTS' unlawful discrimination against PLAINTIFF consisted of treating PLAINTIFF differently based on his use of leave authorized by the Family Medical Leave Act related to employment, including recruitment, hiring, assignments, discipline, promotion, and benefits.  DEFENDANTS discriminated against PLAINTIFF for PLAINTIFF'S exercise of his right to take unpaid leave from work as authorized by the Family Medical Leave Act (29 U.S.C. §2601 *et seq.*).

58.   DEFENDANTS interfered with PLAINTIFF'S right to take unpaid leave from work in violation of the Family Medical Leave Act (29 U.S.C. §2601 *et seq.*).

59.   PLAINTIFF claims that exercise of his right to take leave from work as authorized by the Family Medical Leave Act was either the sole reason or a motivating factor for DEFENDANTS' decision to: interfere with and harass PLAINTIFF because of his need to take leave for qualified medical reasons; to violate Nevada Revised Statutes, sections 608.016, 608.018, 608.019, 608.020, 608.030, 608.100 and 608.190; fail to properly accommodate him due to his medical condition; and to demote PLAINTIFF multiple times, among other adverse employment actions.

60.   As a proximate result of DEFENDANTS' discriminatory actions, PLAINTIFF suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.  As a result of those actions and consequent harms, PLAINTIFF suffered such damages in an amount to be proved at trial.

61.   ELDORADO, through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of DEFENDANTS and ELDORADO'S supervisors and Human Resources Department as described above thereby ratifying the unlawful conduct of its agents or supervisors.

62.   DEFENDANTS' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for PLAINTIFF'S federally protected rights.

63.   PLAINTIFF requests relief as described in the Prayer for Relief below.

//

//

## COUNT IV

## BREACH OF CONTRACT

### (ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)

64.     PLAINTIFF hereby incorporates paragraphs 1 through 62 of this Complaint as though fully set forth herein.

65.     In or about 2001, PLAINTIFF and ELDORADO and DOES 1 through 50, inclusive, entered into a contract for employment (hereinafter, "the Contract"). The contract has taken different forms over the years and PLAINTIFF believes he has had several different written contracts. PLAINTIFF requested ELDORADO forward a copy of his personnel file and ELDORADO and DOES 1 through 50 have refused and/or failed to provide PLAINTIFF any copies of the various versions of written contracts over the years. As such, PLAINTIFF cannot attach a copy of the operative written contract(s). However, the essential terms of the agreement included PLAINTIFF working to sell timeshares in exchange for a base wage and commissions. Also, as part of the contract was that ELDORADO agreed to pay wages and provide benefits in accordance with state and federal laws. These benefits include but are not limited to providing meal and rest breaks, timely payment of wages, proper management and distribution of wages, and payment of wages for each hour worked.

66.     Throughout PLAINTIFF'S employment ELDORADO breached the employment contract by intentionally stealing money (wages) from PLAINTIFF by indiscriminately charging commission reversals against his earnings, commission reversals for sales made months and years before the reversal charge. ELDORADO also "back-doored" numerous sales made by PLAINTIFF when they contacted customers and offered a new, better deal for the customer. When the customer accepted, ELDORADO cancelled PLAINTIFF'S sale and sold the property directly to the customer. ELDORADO then cut PLAINTIFF'S commission on his sale. ELDORADO also breached the contract by failing to pay PLAINTIFF overtime; failing to pay PLAINTIFF for each hour that he worked; depriving PLAINTIFF any breaks for lunch or rest; unlawfully taking PLAINTIFF'S wages as described herein; and refusing to pay wages due to him.

67.     ELDORADO further breached the employment contract(s) by harassing, and demoting PLAINTIFF because of PLAINTIFF'S refusal to participate in ELDORADO'S unlawful, discriminatory practice of issuing write-ups to FMLA employees for the sole purpose of putting them on administrative leave.

68.     PLAINTIFF anticipates alleging additional breaches of the written employment agreement(s) occurred but cannot specify those breaches until he has had an opportunity to review the written contracts maintained by ELDORADO.

69.     PLAINTIFF performed all obligations under the employment contract with ELDORADO except those Plaintiffs were prevented or excused from performing.

70.     ELDORADO'S breaches of the employment contract were the legal cause of PLAINTIFF suffering damages.

71.     PLAINTIFF damages include lost / stolen wages, lost benefits, attorneys' fees, a substantial increase in debt to cover expenses from lost / stolen wages and other consequential damages.

72.     PLAINTIFF requests relief as described in the Prayer for Relief below.

<u>**COUNT V**</u>

<u>**RETALIATION**</u>

**Family Medical Leave Act (29 U.S.C. §2601 *et seq.*)**

**Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*)**

**Title VII - Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*)**

**NV Rev. Stat. §613.330 *et seq.***

**(ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)**

73.     PLAINTIFF hereby incorporates paragraphs 1 through 71 of this Complaint as though fully set forth herein.

74.     PLAINTIFF engaged in an activity protected under federal laws, including reporting of DEFENDANTS' intentional, voluntary, deliberate, and willful discrimination against PLAINTIFF and his fellow employees by depriving of or interfering with PLAINTIFF'S

1  rights and benefits and ELDORADO subjected PLAINTIFF to adverse employment acts,

2  including but not limited to a reduction in pay and suspension.

3       75.    In addition, PLAINTIFF refused to participate in DEFENDANTS' systematic

4  discrimination against his fellow employees based on their FMLA status. PLAINTIFF refused to

5  issue write-ups or otherwise comply with DEFENDANTS' systematic, unlawful discrimination

6  against FMLA employees.   As a result, ELDORADO subjected PLAINTIFF to adverse

7  employment acts, including but not limited to a reduction in pay, and suspension.

8       76.    DEFENDANTS further retaliated against PLAINTIFF by refusing to allow him to

9  take FMLA leave, thereby denying him of his rights under the FMLA.

10      77.    PLAINTIFF was subjected to the adverse employment actions described herein

11  because of his reporting of DEFENDANTS' intentional, voluntary, deliberate, and willful

12  discrimination against PLAINTIFF and others by depriving of or interfering with PLAINTIFF'S

13  rights and benefits and others' rights and benefits under Title VII of the Civil Rights Act of 1964

14  (42 U.S.C. §2000e *et seq.*); and/or Title VII - Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*);

15  and/or the Family Medical Leave Act (29 U.S.C. §2601 et seq).

16      78.    PLAINTIFF was subjected to the adverse employment action described herein

17  because of his participation in the protected activity and adverse employment action would not

18  have occurred but for that participation.

19      79.    As a direct and proximate result of ELDORADO'S willful, knowing, and

20  intentional discrimination and retaliation against PLAINTIFF, PLAINTIFF has suffered pain,

21  humiliation and emotional distress.

22      80.    PLAINTIFF has suffered and will continue to suffer a loss of earnings and other

23  employment benefits and job opportunities. PLAINTIFF is thereby entitled to general and

24  compensatory damages in amounts to be proven at trial.

25      81.    ELDORADO'S unlawful actions were intentional, willful, malicious and/or done

26  with reckless disregard for PLAINTIFF'S federally protected rights.

27      82.    PLAINTIFF requests relief as described in the Prayer for Relief below.

28  //

## COUNT VI

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)

83.     PLAINTIFF hereby incorporates paragraphs 1 through 81 of this Complaint as though fully set forth herein.

84.     A contract existed between PLAINTIFF and ELDORADO.

85.     In the state of Nevada, every contract imposes upon each party a duty of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other. See *Great American Ins. Co. v. General Builders, Inc.*, 113 Nev. 346, 934 P.2d 257 (1997); *Falline v. GNLV Corp.*, 107 Nev. 1004, 823 P.2d 888 (1991); *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 969 P.2d 949 (1998).

86.     ELDORADO acted in a manner described herein that was unfaithful to the purpose of the contract or deliberately contravened the intention and spirit of the contract by its intentional, willful and malicious violation of the employment contract, and violations of federal and state laws protecting employees in all employment relationships.  The intentional, willful and malicious violations include, but are not limited to, ELDORADO intentionally stealing money (wages) from PLAINTIFF by indiscriminately charging commission reversals against his earnings, commission reversals for sales made months and years before the reversal charge.  ELDORADO also "back-doored" numerous sales made by PLAINTIFF when they contacted customers and offered a new, better deal for the customer.  When the customer accepted, ELDORADO cancelled PLAINTIFF'S sale and sold the property directly to the customer.  ELDORADO then cut PLAINTIFF'S commission on his sale.

87.     For years during PLAINTIFF'S employment, ELDORADO violated several state and federal statutes specifically designed to protect employees against the wrongful conduct of employers.   These violations include but are not limited to ELDORADO failing to pay PLAINTIFF overtime (Fair Labor Standards Act of 1938 (29 U.S.C. §§ 201 *et seq*. and NV Rev. Stat. §608.018); ELDORADO failing to pay PLAINTIFF for each hour that he worked (NV Rev. Stat. §608.016); ELDORADO depriving PLAINTIFF, and most of its employees, any breaks for

1   lunch or rest (NV Rev. Stat. §608.019); ELDORADO unlawfully taking PLAINTIFF'S wages as

2   described herein (NV Rev. Stat. §608.100); and ELDORADO refusing to pay wages due (NV

3   Rev. Stat. §608.190).

4        88.    For years during PLAINTIFF'S employment, ELDORADO also violated several

5   state and federal statutes including not limited to Title VII of the Civil Rights Act of 1964 (42

6   U.S.C. §2000e *et seq.*); and Title VII of the Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*).

7        89.    In addition, ELDORADO punished PLAINTIFF for his refusal to participate in

8   ELDORADO'S unlawful, systematic discrimination against FMLA employees.  He was directed

9   to issue write-ups to FMLA employees so that ELDORADO could place them on administrative

10  leave, which would cause them to lose their FMLA status.  As a result of PLAINTIFF'S refusal

11  to participate in this unlawful conduct, he was harassed and eventually constructively discharged.

12       90.    In depriving PLAINTIFF of his rights under federal and state law, ELDORADO

13  acted out of pretension, misrepresentation and fraud as PLAINTIFF'S employer.

14  ELDORADO'S actions violated the special relationship of trust between employers and

15  employees and the arbitrary, abusive, intentional, malicious harassment cries out for relief and

16  for a remedy beyond that traditionally flowing from breach of contract, statutory or other

17  administrative remedies.

18       91.    ELDORADO'S conduct was a substantial factor in causing damage to

19  PLAINTIFF.

20       92.    As a direct and proximate result of ELDORADO'S intolerable actions and

21  violations of strong and compelling public policy, PLAINTIFF has suffered harm including but

22  not limited to lost wages and a devastatingly negative financial impact on his well-being.

23       93.    There is no adequate contractual, statutory or administrative remedy for

24  ELDORADO'S violation of strong and compelling public policy.

25       94.    PLAINTIFF seeks to recover damages based upon a claim of breach of the

26  implied covenant of good faith and fair dealing arising out of the contracts with ELDORADO.

27  //

28  //

## COUNT VII

## TORTIOUS DISCHARGE

## (ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)

95.     PLAINTIFF hereby incorporates paragraphs 1-93 of this Complaint as through fully set forth herein.

96.     PLAINTIFF engaged in conduct in furtherance of public policy.  Specifically, PLAINTIFF refused to illegally write up FMLA employees without cause.

97.     ELDORADO had actual and constructive knowledge of PLAINTIFF'S conduct in that PLAINTIFF told his supervisors that he refused to issue write-ups simply because an employee was on FMLA.

98.     Because PLAINTIFF refused to issue write-ups to FMLA employees without cause, he was eventually constructively discharged in derogation of the public policy of the State of Nevada.

99.     Furthermore, ELDORADO intentionally stole money (wages) from PLAINTIFF by indiscriminately charging commission reversals against his earnings, commission reversals for sales made months and years before the reversal charge.  ELDORADO also "backdoored" numerous sales made by PLAINTIFF when they contacted customers and offered a new, better deal for the customer.  When the customer accepted, ELDORADO cancelled PLAINTIFF'S sale and sold the property directly to the customer.  ELDORADO then cut PLAINTIFF'S commission on his sale.

100.    PLAINTIFF asked for an explanation for the taking of his commissions and failure to pay all wages to which he was due.  The wages due are protected by state and federal law.  When he asked for information regarding these commission reversals (or "charge backs" as they are referred to at ELDORADO) and taking of his wages, he met significant resistance and was not provided any specific information to explain the charge backs.  PLAINTIFF requested on several additional occasions the opportunity to review the sales numbers to confirm his commissions and to understand the commission reversals set out in his pay stubs and to confirm the amount of wages wrongly taken from him in violation of his contract and federal and state

1   law.   PLAINTIFF objected to the commission reversals and he sought correction to the willfully
2   and wrongfully held wages.

3      101.   Furthermore, ELDORADO failed to pay PLAINTIFF overtime due to him.
4   PLAINTIFF was also denied rest breaks and uninterrupted meal breaks during his employment
5   with ELDORADO.

6      102.   PLAINTIFF was subsequently terminated.

7      103.   PLAINTIFF'S constructive discharge was motivated by action and conditions of
8   ELDORADO that are in violation of a strong and compelling public policy.   ELDORADO acted
9   out of pretension, misrepresentation and fraud as PLAINTIFF'S employer.   ELDORADO'S
10  actions violated the special relationship of trust between employers and employees and the
11  arbitrary, abusive, intentional, malicious termination cries out for relief and for a remedy beyond
12  that traditionally flowing from breach of contract, statutory or other administrative remedies.

13     104.   ELDORADO'S conduct was a substantial factor in causing damage to the
14  PLAINTIFF.

15     105.   As a direct and proximate result of ELDORADO'S intolerable actions and
16  violations of strong and compelling public policy, PLAINTIFF has suffered harm including but
17  not limited to lost wages, loss of pension benefits, a long period of unemployment, and a
18  devastatingly negative financial impact on his well-being.

19     106.   There is no adequate contractual, statutory or administrative remedy for
20  ELDORADO'S violation of strong and compelling public policy.

21     107.   PLAINTIFF requests relief as described in the Prayer for Relief below.

22                                **COUNT VIII**

23              **WAGE AND HOUR VIOLATION - OVERTIME**

24        **Fair Labor Standards Act of 1938 (29 U.S.C. §§ 201 *et seq.*)**

25                        **NV Rev. Stat. §608.018**

26        **(ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)**

27     108.   PLAINTIFF hereby incorporates paragraphs 1 through 106 of this Complaint as
28  though fully set forth herein.

109.   At all relevant times, ELDORADO was an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the 29 U.S.C. § 203.   At all relevant times, ELDORADO employed "employee[s]," including PLAINTIFF.   At all relevant times, ELDORADO had gross operating revenues in excess of $500,000.

110.   ELDORADO, pursuant to their uniform, systematic and non-individualized policies and practices, failed and refused to pay overtime.

111.   By failing to compensate PLAINTIFF at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, ELDORADO violated 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. § 207(a)(1) and § 215(a).

112.   ELDORADO'S conduct, as alleged, constitutes a willful violation of the Fair Labor Standards Act ("FLSA") within the meaning of 29 U.S.C. § 255(a).

113.   PLAINTIFF seeks recovery of his attorneys' fees and costs of action to be paid by ELDORADO, as provided by the FLSA, 29 U.S.C. § 216(b).

114.   PLAINTIFF seeks damage in the amount his unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as this Court deems just and proper.

## COUNT IX

### WAGE AND HOUR VIOLATION – FAILURE TO PAY EACH HOUR WORKED

**NV Rev. Stat. §608.016**

**(ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)**

115.   PLAINTIFF hereby incorporates paragraphs 1 through 113 of this Complaint as though fully set forth herein.

116.   An employer shall pay to the employee wages for each hour the employee works.

117.   ELDORADO failed to pay PLAINTIFF for each hour of his work in violation of NV Rev. Stat. §608.016.

118.   PLAINTIFF seeks damages in the amount of his unpaid wages for the work he performed for ELDORADO.

119.    PLAINTIFF requests relief as described in the Prayer for Relief below.

## COUNT X

### WAGE AND HOUR VIOLATION – PERIODS FOR MEAL AND REST

#### NV Rev. Stat. §608.019

**(ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)**

120.    PLAINTIFF hereby incorporates paragraphs 1 through 118 of this Complaint as though fully set forth herein.

121.    ELDORADO employed PLAINTIFF for a continuous period of 8 hours without permitting PLAINTIFF to have a meal period of a least one-half hour.

122.    ELDORADO prohibited PLAINTIFF from taking rest periods, which insofar as practicable, shall be permitted in the middle of each work period.

123.    ELDORADO failed to provide meal and rest periods in violation of NV Rev. Stat. §608.019.

124.    PLAINTIFF requests relief as described in the Prayer for Relief below.

## COUNT XI

### WAGE AND HOUR VIOLATION – UNLAWFUL TAKING OF WAGES

#### NV Rev. Stat. §608.100

**(ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)**

125.    PLAINTIFF hereby incorporates paragraphs 1 through 123 of this Complaint as though fully set forth herein.

126.    ELDORADO unlawfully (a) paid a lower wage, salary or compensation to PLAINTIFF than the amount agreed upon through a collective bargaining agreement, if any; (b) paid a lower wage, salary or compensation to PLAINTIFF than the amount that ELDORADO is required to pay to PLAINTIFF by virtue of any statute or regulation or by contract between the employer and the employee; or (c) paid a lower wage, salary or compensation to PLAINTIFF than the amount earned by the employee when the work was performed.

127.    ELDORADO unlawfully required PLAINTIFF to rebate, refund or return any part of the wage, salary or compensation earned by and paid to PLAINTIFF.

128.    Specifically, ELDORADO intentionally stole money from PLAINTIFF by indiscriminately charging commission reversals against his earnings, commission reversals for sales made months and years before the reversal charge. ELDORADO failed to pay PLAINTIFF overtime due to him. ELDORADO also "backdoored" numerous sales made by PLAINTIFF when they contacted customers and offered a new, better deal for the customer. When the customer accepted, ELDORADO cancelled PLAINTIFF'S sale and sold the property directly to the customer. ELDORADO then cut PLAINTIFF'S commission on his sale.

129.    ELDORADO unlawfully implemented a decrease in PLAINTIFF'S wage, salary and/or compensation in that ELDORADO did not (a) Not less than 7 days before the employee performs any work at the decreased wage, salary or compensation, the employer provides the employee with written notice of the decrease; or (b) The employer complies with the requirements relating to the decrease that are imposed on the employer pursuant to the provisions of any collective bargaining agreement or any contract between the employer and the employee.

130.    ELDORADO acted unlawfully in violation of NV Rev. Stat. §608.100.

131.    PLAINTIFF requests relief as described in the Prayer for Relief below.

## COUNT XII

### WAGE AND HOUR VIOLATION – WILLFUL FAILURE / REFUSAL TO PAY WAGES

### NV Rev. Stat. §608.190

### (ELDORADO RESORTS CORPORATION AND DOES 1-50, inclusive.)

132.    PLAINTIFF hereby incorporates paragraphs 1 through 130 of this Complaint as though fully set forth herein.

133.    ELDORADO willfully refused and/or neglected to pay the wages due and payable to PLAINTIFF when demanded by PLAINTIFF, and/or falsely denied the amount or validity thereof and/or that the amount is due with intent to annoy, harass, oppress, hinder, delay or defraud the PLAINTIFF to whom such indebtedness is due.

134.    ELDORADO'S acted unlawfully in violation of NV Rev. Stat. §608.190.

135.    PLAINTIFF requests relief as described in the Prayer for Relief below.

//

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays that this Court grant the following relief:

A.  Grant PLAINTIFF the recovery of lost income that is equal to the amount of the stipend and subsequent employment obligation he had prior to the alleged violations plus interest.

B.  Grant general and special damages in amounts according to proof pursuant to U.S.C. §2617, 42 U.S.C. §1983, and other applicable statutes.

C.  Punitive damages to punish and deter Defendants' conduct.

D.  Reasonable attorneys' fees pursuant to 29 U.S.C. § 2617(a)(3), and other applicable statutes.

E.  Grant costs of suit incurred herein; and,

F.  Grant such other and further relief as the court deems just and proper.

DATED:  8/4/2015                          WATKINS & LETOFSKY, LLP

By:      _____
         DANIEL R. WATKINS
         BRIAN S. LETOFSKY
         Attorneys for PLAINTIFF,
         RAYMOND COURY

//
//
//
//
//
//
//
//
//
//
//

## REQUEST FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b) and §102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a. PLAINTIFF demands a trial by jury in this action on all issues so triable.

DATED:  8/4/2015

WATKINS & LETOFSKY, LLP

By: _____
DANIEL R. WATKINS
BRIAN S. LETOFSKY
Attorneys for PLAINTIFF,
RAYMOND COURY

EXHIBIT "1"

JUN. 15. 2015  2:58PM    213-894-1118                                    NO. 7919   P. 4/4

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Raymond Coury<br>1662 Graystone Canyon Ave.<br>Logandale, NV 89183 | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

[ ]  *On behalf of person(s) aggrieved whose identity is*
     *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 34B-2014-00847 | Karrie L. Maeda,<br>State & Local Coordinator | (213) 894-1100 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Santos B. Alarcon*                                    June 3, 2015

Rosa M. Viramontes,                                    *(Date Mailed)*
District Director

Enclosures(s)

cc:    Kristen Beck
       Regional HR Director
       EL DORADO RESORT CORPORATION
       2150 W Jo Rae Ave.
       Las Vegas, NV 89183